JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BAHAR SENGEL and CENGIZ SENGEL,<br><br>Plaintiffs,<br><br>v.<br><br>CONCORD SERVICING CORP. d/b/a BLACKWELL RECOVERY,<br><br>Defendant. | Case No.: EDCV 21-01454-CJC(SHKx)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE [Dkt. 11] |

## I.    INTRODUCTION & BACKGROUND

On August 26, 2021, Plaintiffs Bahar Sengel and Cengiz Sengel filed this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §1788 *et seq.*, against Defendant Concord Servicing Corp. d/b/a Blackwell Recovery.  (Dkt. 1 [Complaint, hereinafter "Compl."].)  The action arises out

of Defendant's attempt to collect a debt Plaintiffs owed to a homeowners association. (*Id.* ¶ 10.)

On August 6, 2021, Defendant mailed a debt-collection letter to Plaintiffs, informing them of a debt they owed ("August letter").[1]  (*Id.* ¶ 12; *see* Dkt. 11-4 [August letter].)  Plaintiffs appear to have screen grabbed a portion of the August letter and pasted it into their Complaint.  (*See* Compl. ¶ 14.)  The August letter informed Plaintiffs that they owed $7.12 in late charges, $282.73 in maintenance fees, and $110.26 in collection fees, for a total balance due of $400.11.  (*Id.* ¶ 14.)  A portion of the letter appears below:

| Late Charges | $7.12 |
| Maintenance Fees | $282.73 |
| Collection Fees | $110.26 |
| | |
| Total Balance Due | $400.11 |

(*Id.*)  Plaintiffs allege that Defendant provided no further information as to the nature of the debt or any other information that would have allowed Plaintiffs to go about intelligently addressing it.  (*Id.* ¶ 16.)  Specifically, Plaintiffs allege that "the August letter fails to adequately advise Plaintiffs of the current creditor to whom the subject debt is owed, as required by 15 U.S.C. § 1692(g)(a)(2)" nor does it "clarify to whom the subject debt is now owed."  (*Id.* ¶¶ 18, 19.)  Plaintiffs also state that "the August letter does not contain information pertaining to any creditor at all."  (*Id.* ¶ 20.)

The first paragraph of the August letter provides "Blackwell Recovery has been retained by WORLDMARK BY WYNDHAM, HOA to assist in resolving your account.

---

[1] Courts "may . . . consider documents that are incorporated by reference, but not physically attached to, the complaint if they are central to plaintiff's claim and no party questions their authenticity." *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Since Plaintiffs base their allegations upon the August letter and do not question its authenticity, the August letter is incorporated by reference.

Please remit your past due balance of $400.11 (see Breakdown above), which includes maintenance fees, late charges, and other applicable charges allowed by your contract, made payable to WORLDMARK, THE CLUB." (August letter at 1 [emphases in original].)

Yet Plaintiffs claim that the August letter failed to identify the creditor and, as such, was "misleading and confusing to Plaintiffs[] and is similarly misleading and confusing to the unsophisticated consumer." (Compl. ¶ 21.) Plaintiffs allege they "have suffered a concrete harm as a result of Defendant's conduct, including but not limited to emotional distress, feeling harassed, deprivation of substantive and vital information in connection with Defendant's collection efforts, as well as harm and risk of harm to Plaintiffs' concrete interests under the FDCPA as Defendant's conduct deprived Plaintiffs of being able to go about intelligently responding to Defendant's collection efforts – an underlying interest which is at the core of the FDCPA." (*Id.* ¶ 24.)

Before the Court is Defendant's 12(b)(1) motion to dismiss Plaintiff's Complaint for lack of standing, or in the alternative Defendant's 12(b)(6) motion for failure to state a claim under both the FDCPA and the Rosenthal Act. (Dkt. 11 [hereinafter "Mot."].) For the following reasons, Defendant's motion is **GRANTED**.[2]

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, federal courts are presumed to lack jurisdiction in a particular case "unless the contrary affirmatively appears." *Stock W.,*

---

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for February 7, 2022, at 1:30 p.m. is hereby vacated and off calendar.

*Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In deciding a Rule 12(b)(1) motion challenging subject matter jurisdiction, the burden of proof is on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise. *See Kokkonen*, 511 U.S. at 377.

Article III of the Constitution requires that courts adjudicate only actual cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1; *see also Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). To meet this "irreducible constitutional minimum," plaintiffs must establish that they have standing, which requires that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "A plaintiff has the burden to establish that it has standing." *WildEarth Guardians v. U.S. Dep't of Agriculture*, 795 F.3d 1148, 1154 (9th Cir. 2015). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

## III. DISCUSSION

Plaintiffs have failed to allege a sufficient Article III injury to establish subject matter jurisdiction. The Ninth Circuit uses a two-step approach to assess whether a statutory violation, such as a violation of the FDCPA, constitutes a concrete injury sufficient to satisfy Article III's standing requirements. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019); *see Lenzini v. DCM Servs., LLC*, 2021 U.S. Dist. LEXIS 100007, at *6 (N.D. Cal. May 26, 2021). Under the approach, courts "ask '(1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (alteration omitted) (quoting *Robins v. Spokeo*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

A recent Ninth Circuit decision, *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544 (2020), addressed a substantively similar claim to the one Plaintiffs raise here and applied the two-step approach to determine if the plaintiffs had standing. Under the first step, the Ninth Circuit explained that the FDCPA was more designed to protect procedural rights rather than concrete interests. *Id.* at 546. To arrive at that finding, the Circuit evaluated the "[h]istorical practice" and the "legislative judgment" underlying the FDCPA. *Id.* (quoting *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020)). Historically, the Circuit reasoned that the closest common law analogue to an FDCPA claim premised on misleading statements is fraud. *Id.* To state a sufficient injury under a fraud claim, the plaintiff must plead "proof of reliance and resulting pecuniary loss." *Id.* Legislatively, the Ninth Circuit reasoned that Congress in passing the FDCPA was concerned with "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response" to a debt collector's communication. *Id.* at 546. The Circuit concluded that statements in a debt-collection letter "that induce no

reliance do not impede a consumer's ability to intelligently respond to a debt collector[.]" *Id.*

Under the second step, the Ninth Circuit found that the plaintiff had not alleged actual harm or a material risk of harm to the procedural interests the FDCPA protects because "[n]othing in the [c]omplaint suggests he took or forewent any action because of the allegedly misleading statements in the letter." *Id.* at 547. Instead, "the Complaint includes a bare allegation of confusion. Without more, confusion does not constitute an actual harm to [plaintiff's] concrete interests." *Id.* Thus, plaintiff's alleged confusion by the debt collection letter was not enough to confer Article III standing. *Id.*

Similarly, in *Lenzini v. DCM Servs., LLC*, a district court applied *Adams* to an FDCPA claim based on misleading statements in a debt collection letter and found that the plaintiff's complaint failed to allege an Article III injury. 2021 U.S. Dist. LEXIS 100007 (N.D. Cal. May 26, 2021). There, the plaintiff alleged that because the defendant failed to identify the current creditor, "[plaintiff] did not make a payment on the subject debt as the omission of the identify [sic] of the current creditor rendered it impossible for [plaintiff] to determine whom she is ultimately paying." *Id.* at *10. The district court found that this was not enough to allege reliance on the misleading statement. The district court reasoned that the plaintiff did not allege that she would have paid the correct creditor but believed another party would have been more appropriate to pay. *Id.* "Nor [did] she adequately explain or allege *how* [the debt collection letter] was confusing where [the creditor] was listed as both the 'original creditor' and the 'creditor" on the letter[.]" *Id.* (emphasis in original). Accordingly, the plaintiff lacked standing. *Id.*

This case is similar to *Adams* and *Lenzini*. Here, Plaintiffs allege the August letter was "misleading and confusing to Plaintiffs[,]" (Compl. ¶ 21), because it "fails to adequately advise Plaintiffs of the current creditor to whom the subject debt is owed, as

-6-

required by 15 U.S.C. § 1692(g)(a)(2)," nor does it "clarify to whom the subject debt is now owed," (*id.* ¶¶ 18, 19). According to Plaintiffs, the failure to clearly identify the creditor resulted in "concrete harm . . . including but not limited to . . . deprivation of substantive and vital information in connection with Defendant's collection efforts, as well as harm and risk of harm to Plaintiffs' concrete interests under the FDCPA as Defendant's conduct deprived Plaintiffs of being able to go about intelligently responding to Defendant's collection efforts – an underlying interest which is at the core of the FDCPA." (*Id.* ¶ 24.) But like *Adams* and *Lenzini*, Plaintiffs fail to explain how they relied upon the allegedly confusing August letter—that is, took or forwent action because of the August letter—to their detriment. *See Adams*, 836 F. App'x at 547; *Lenzini*, 2021 U.S. Dist. LEXIS 100007 at *10. Though Plaintiffs explain that the lack of information in the letter prevented them from being able to "intelligently address" the debt owed, (*id.* ¶16), they do not explain what detriment they incurred because of that failure. For example, Plaintiffs do not state that they read the letter, paid the debt as they understood the letter to instruct, but actually paid the wrong creditor. Nor do Plaintiffs identify any additional fees they incurred because of their failure to take any action in response to the debt. Doing nothing in response to an allegedly confusing letter is simply not enough to establish subject matter jurisdiction.

Plaintiffs also fail to allege how the August letter was confusing. Like the debt-collection letter in *Lenzini*, the August letter *does* identify the creditor owed. *See Lenzini*, 2021 U.S. Dist. LEXIS 100007 at *10. Though Plaintiffs omitted most of the August letter from their Complaint, the letter states in the very first paragraph that "Blackwell Recovery has been retained by WORLDMARK BY WYNDHAM, HOA to assist in resolving your account. Please remit your past due balance of $400.11 . . . which includes maintenance fees, late charges, and other applicable charges allowed by your contract, made payable to WORLDMARK, THE CLUB." (August Letter at 1 [emphases in original].) Contrary to Plaintiffs' assertions (Dkt. 20 [Plaintiffs' Opposition to

Defendant's Motion to Dismiss, hereinafter "Opp."] at 4), unsophisticated consumers would be able to discern who the creditor is and who Plaintiffs should pay.

Plaintiffs attempt to distinguish their case from *Adams* and *Lenzini*, arguing that they do allege an Article III injury because they state the August letter caused them more than confusion, but also "emotional distress" and left them "feeling harassed." (Opp. at 5–7; Compl. ¶ 24.) Just as Plaintiffs fail to explain how the August letter caused them confusion, so too do Plaintiffs fail to explain how Defendant's conduct caused them emotional distress and left them feeling harassed. Read in the light most favorable to the Plaintiffs, it was Plaintiffs' alleged confusion over the correct creditor that led to the emotional distress and their perceived harassment. But again, Plaintiffs fail to explain how a letter which clearly identifies the correct creditor would lead to such injuries. While emotional distress and feelings of harassment may be a concrete injury, it is not enough to confer standing in this instance because, as alleged, the complained of harm is not "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc.*, 136 S. Ct. at 1547.

//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. The action is **DISMISSED WITHOUT PREJUDICE**.

DATED: January 26, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE